1   Peter Anderson, Esq., Cal. Bar No. 88891
        peteranderson@dwt.com
2   Adrian Vallens, Esq., Cal. Bar No. 332013
        adrianvallens@dwt.com
3   DAVIS WRIGHT TREMAINE LLP
    865 South Figueroa Street, 24th Floor
4   Los Angeles, CA 90017-2566
    Tel: (213) 633-6800
5   Fax: (213) 633-6899

6   Attorneys for Defendant
    MONTERO LAMAR HILL
7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                    WESTERN DIVISION

11   RODNEY WOODLAND,                    )   Case No. 2:22-cv-03930-AB-MRWx
                                         )
12              Plaintiff,               )
                                         )   MEMORANDUM OF POINTS AND
13        v.                             )   AUTHORITIES IN SUPPORT OF
                                         )   MOTION TO DISMISS SECOND
14   MONTERO LAMAR HILL, aka LIL         )   AMENDED COMPLAINT
     NAS X; and Does 1-10, Inclusive,    )
15                                       )
                Defendants.              )   Date: February 10, 2023
16                                       )   Time: 10:00 a.m.
                                         )
17   _____)
                                             Courtroom of the Honorable
18                                              André Birotte Jr.
                                             United States District Judge
19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES................................................1

1.      INTRODUCTION................................................................................................1

    (a)   Summary of Argument................................................................................1

    (b)   Summary of Procedural History .................................................................3

    (c)   Summary of Plaintiff's Second Amended Complaint .........................4

2.      PLAINTIFF FAILS TO PLEAD PLAUSIBLE CLAIMS FOR
RELIEF .............................................................................................................5

    (a)   The Standards Applicable to this Motion ...............................................5

    (b)   Plaintiff Again Fails to Plausibly Allege That Copying
        Occurred .......................................................................................................6

        (1)   Plaintiff Must Plausibly Allege That Copying Occurred ..........6

        (2)   Plaintiff Fails to Plausibly Allege Striking Similarity...............6

        (3)   Plaintiff Again Fails to Plausibly Allege Access by a
             Chain of Events or Wide Dissemination ...................................8

    (c)   Plaintiff Still Fails to Plausibly Allege Copying of Protected
        Expression ....................................................................................................10

        (1)   The Extrinsic Test for Substantial Similarity ..........................10

             (i)    General Principles .........................................................10

             (ii)   The Extrinsic Test as Applied to Photographs...............11

        (2)   The Photos Are Not Substantially Similar in Protected
             Expression under the Extrinsic Test .........................................12

             (i)    SAC Ex. A – 1st Set (Doc. 38-1 at 2) ............................13

             (ii)   SAC Ex. A – 2nd Set (Doc. 38-1 at 4) ...........................15

             (iii)  SAC Ex. A – 3rd Set (Doc. 38-1 at 4)..............................16

    (iv) SAC Ex. A – 4th & 5th Sets (Doc. 38-1 at 5-6) ...............18

    (v) SAC Ex. A - 6th & 7th Sets (Doc. 38-1 at 7-8) ...............19

    (vi) SAC Ex. A – 8th Set (Doc. 38-1 at 9) ...........................21

    (vii) SAC Ex. A – 9th Set (Doc. 38-1 at 10) ........................22

    (viii) SAC Ex. A – 10th Set (Doc. 38-1 at 11) ........................23

  (d) Granting Plaintiff Leave to Amend a Fourth Time Would Be Futile ...........................................................................................25

3. CONCLUSION ...........................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Art Attacks Ink LLC v. MGA Entm't Inc.*,
581 F.3d 1138 (9th Cir. 2009) ............................................................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................6

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1988) .............................................................5

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................. 5, 6, 7

*Briggs v. Blomkamp*,
70 F. Supp. 3d 1155 (N.D. Cal. 2014) ................................................8

*Cavalier v. Random House, Inc.*,
297 F.3d 815 (9th Cir. 2002) ...........................................................10

*Christian v. Mattel, Inc.*,
286 F.3d 1118 (9th Cir. 2002) ...........................................................9

*Christianson v. West Pub. Co.*,
149 F.2d 202 (9th Cir. 1945) ...........................................................11

*eCash Tech. v. Guargliardo*,
127 F. Supp. 2d 1069 (C.D. Cal. 2000) ..............................................5

*Ets-Hokin v. Skyy Spirits, Inc.*,
323 F.3d 763 (9th Cir. 2003) ...........................................................13

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991) ................................................................... 10, 11

*Funky Films Inc. v. Time Warner Entm't Co.*,
462 F.3d 1072,1078 (9th Cir. 2006) .................................................11

*Ileto v. Glock, Inc.*,
349 F.3d 1191 (9th Cir. 2003) ...........................................................5

*Kouf v. Walt Disney Pictures & Television*,
16 F.3d 1042 (9th Cir. 1994) ...........................................................10

iii

*Loomis v. Cornish*,
   836 F.3d 991 (9th Cir. 2016) ...................................................................8

*Malibu Textiles, Inc. v. Label Lane Int'l Inc.*,
   922 F.3d 946 (9th Cir. 2019) ..................................................................6

*Rentmeester v. Nike*,
   883 F.3d 1111 (9th Cir. 2018), *overruled on other grounds by Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020)
   .............................................................. 2, 3, 6, 10, 11, 12, 14, 24, 25

*Rice v. Fox Broadcasting*,
   330 F.3d 1174 ......................................................................................10

*Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*,
   952 F.3d 1064 .................................................................. 6, 7, 8, 10, 12

*Stabile v. Paul Ltd.*,
   137 F. Supp. 3d 1173 (C.D. Cal. 2015) ...............................................7, 8

*Three Boys Music Corp. v. Bolton*,
   212 F.3d 477 (9th Cir. 2000), *overruled on other grounds*, *Skidmore*, 952 F.3d 1051
   ............................................................................................... 8, 11, 12

*Weiss v. DreamWorks SKG*,
   2015 WL 12711658 (C.D. Cal. Feb. 9, 2015) .......................................11

*Wongab Corp. v. Nordstrom, Inc.*,
   2017 WL 10439833 (C.D. Cal. Sept. 21, 2017) (Birotte, J.) .............7, 8

**Statutes**

17 U.S.C. § 301(a) (Copyright Act) .............................................................4

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ........................................... 3, 5, 11

Local Rule 7-3 .............................................................................................3

**Other Authorities**

2 M. NIMMER & D. NIMMER, NIMMER ON COPYRIGHT § 8.01[A] (2022) ...................6

4 NIMMER ON COPYRIGHT § 13.02[B] ...........................................................7, 8

iv

**MEMORANDUM OF POINTS AND AUTHORITIES**

**1.    INTRODUCTION**

    **(a)    Summary of Argument**

In granting defendant Montero Lamar Hill's ("Mr. Hill") Motion to Dismiss plaintiff Rodney Woodland's ("Plaintiff") First Amended Complaint for copyright infringement, declaratory relief, an accounting, and unjust enrichment, the Court provided Plaintiff with a third chance to try to plead a viable claim. *See* Dec. 8, 2022 Order (Doc. 37).[1]  In his Second Amended Complaint ("SAC") (Doc. 38), Plaintiff drops all but his copyright infringement claim, and as to that remaining claim, he fails to cure the two fatal defects that the Court previously identified.

First, the Court correctly ruled that Plaintiff's First Amended Complaint failed to plausibly plead that Mr. Hill had access to Plaintiff's photographs because (1) Plaintiff did not allege any facts establishing access by a chain of events linking his photographs to Mr. Hill, and (2) Plaintiff's allegations that he posted his photographs on his Instagram account and/or website did not plausibly allege access by widespread dissemination.  Order at 4-7; (for convenience, the various allegedly infringed pictorial works are referred to as "photos").  Given the chance to amend, however, Plaintiff still does not allege a chain of events theory or a plausible widespread dissemination theory.

Instead, Plaintiff adds to his repeated allegations of substantial similarity a single reference to unidentified "striking similarities."  SAC at 4, ¶ 12.  But that conclusory reference does not plausibly plead striking similarity obviating the requirement that he plead access.  Nor are the works strikingly similar.  *See below* at 6-8.  Plaintiff's only other new allegation as to access is to argue that the release of Mr. Hill's photos after Plaintiff's photos reflects "remarkable timing" that supports an

---

[1]  This Memorandum contains hyperlinks to cited materials.  Due apparently to the Court's security measures, hyperlinks to internal pages of documents on PACER may lead to the first page of the documents.

1

1   inference that Mr. Hill copied from Plaintiff.  *Id.* at 5, ¶ 13.  But there is nothing

2   "remarkable" about the alleged timing: by definition, a copyright plaintiff's work must

3   predate the defendant's work, and Plaintiff alleges his photos were posted online

4   randomly, anywhere from *months* to *years* prior to Defendant's works.  *See below* at

5   8-10.  Plaintiff again fails to plausibly plead access because access does not exist here.

6   For that reason alone, Mr. Hill's Motion should be granted and Plaintiff's sole

7   remaining claim for copyright infringement dismissed.

8           Second, the Court also correctly ruled that Plaintiff's First Amended Complaint

9   failed to plausibly plead copying of protected expression and instead claimed

10  similarities at a general, unprotected level—such as "a nude, but unexposed black

11  male" and poses—rather than "identify concrete elements based on objective criteria."

12  Order at 8-10 (citation omitted).  Once again, despite being given the chance to amend,

13  Plaintiff fails to plausibly plead the copying of protected expression.

14          Plaintiff—repeating the same conclusory allegations as to generic elements that

15  the Court already found insufficient—claims unidentified similarity in "subject pose,

16  positioning, lighting, visual effects, facial expressions, facial positioning, background

17  elements, body imagery and nudity."  SAC at 13-14, ¶ 22; Order at 8-10.  Also, his

18  conclusory allegations are trumped by the photos he again attaches to his pleading and

19  which show *the expression* of the generic elements is very different.  *Rentmeester v.*

20  *Nike*, 883 F.3d 1111, 1121-23 (9th Cir. 2018) (affirming Rule 12(b)(6) dismissal

21  where the parties' photos established the claimed similarities are not protected

22  expression), *overruled on other grounds by Skidmore as Tr. for Randy Craig Wolfe*

23  *Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020).

24          Plaintiff does now add his alleged inspirations and creative choices as to his

25  photos.  SAC at 7-11, ¶ 15.  But he still fails to identify any actual similarities with

26  Mr. Hill's photos.  And Plaintiff's explanation for his inspirations and creative

27  choices, *e.g.*, his choice of a pose, does not change that "he cannot copyright the pose

28  itself and thereby prevent others from photographing a person in the same pose."

2

*Rentmeester*, 883 F.3d at 1119.    *See below* at 10-25.    For this additional and independent reason, Mr. Hill's Motion should be granted and Plaintiff's sole remaining claim for copyright infringement dismissed.

To survive Mr. Hill's Rule 12(b)(6) Motion, Plaintiff must plausibly plead both that copying occurred and that the claimed copying is of protected expression.  Despite three opportunities, he still fails to plead these requirements, let alone both of them.  A fourth chance to plead copyright infringement would be futile, including because Plaintiff cannot change the photos and "the allegedly infringing works are as a matter of law not substantially similar."  *Rentmeester*, 883 F.3d at 1125 (affirming district court's denial of leave to amend).  Accordingly, Mr. Hill respectfully submits that this time his Motion should be granted without leave to amend.

**(b)    Summary of Procedural History**

Plaintiff has to date filed three complaints in this action.  His initial Complaint asserted claims for copyright infringement, declaratory relief, an accounting, and unjust enrichment.  Complaint (Doc. 1).  But his initial Complaint, among other things, failed to plausibly allege copying, did not identify the allegedly infringing photos, and did not attach the allegedly infringed photos.  After counsel met and conferred pursuant to Local Rule 7-3, Plaintiff undertook to file an amended complaint.  *See* Stip. to Order *re* Amendment (Doc. 15); Order (Doc. 18).

When Plaintiff filed his First Amended Complaint, he attached copies of the purportedly infringed and infringing photos.  FAC at 4-5, ¶ 12, & Ex. A (Doc. 19-1).  But, again, among other things, he still did not plausibly allege copying of protected expression, instead alleging only that the photos are substantially similar, including in "poses, colors, lighting, visual effects and coloring."  *Id.* at 5-6, ¶¶ 13-14.[2]  After another Local Rule 7-3 conference, Mr. Hill filed his Motion to Dismiss the First

---

[2] Plaintiff's First Amended Complaint also stated claims for declaratory relief, an accounting, and unjust enrichment, which the Court dismissed.  Dkt. 37.  Plaintiff does not again re-allege these claims as separate causes of action in the SAC.

1    Amended Complaint, which Plaintiff belatedly opposed.  (Doc. 20, 27)

2         On December 8, 2022, the Court granted Mr. Hill's Motion to Dismiss, with

3    leave to amend.  Order (Doc. 37).  As to Plaintiff's claim for copyright infringement,

4    the Court observed that Plaintiff did not allege any facts suggesting access by a chain

5    of events and concluded that Plaintiff's allegation that his posting of his photos on his

6    Instagram account and website failed to plausibly allege access by widespread

7    dissemination.  Id. at 4-7.   The Court also concluded that Plaintiff's copyright

8    infringement claim failed for the additional reason that Plaintiff did not plausibly

9    allege in his First Amended Complaint—or in his Opposition to Mr. Hill's Motion—

10   copying of protected expression.  Id. at 7-10.   In addition, the Court dismissed

11   Plaintiff's claim for declaratory relief as duplicative of his copyright infringement

12   claim and dismissed his claims for an accounting and unjust enrichment as preempted

13   by the Copyright Act, 17 U.S.C. Section 301(a).  Id. at 10-12.

14        **(c)   <u>Summary of Plaintiff's Second Amended Complaint</u>**[3]

15        On December 28, 2022, Plaintiff filed his Second Amended Complaint,

16   asserting an almost identically worded copyright infringement claim and abandoning

17   his declaratory relief, accounting, and unjust enrichment claims.  SAC.

18        In his Second Amended Complaint, Plaintiff repeats his allegations that he is

19   an adult freelance visual artist, photographer, figure model, and creator of online

20   content.  SAC at 2, ¶ 5.  He claims that he owns the rights to eleven photos that he has

21   taken and published on his Instagram account and/or website (id. at 5, ¶ 13), although

22   he attaches to his Second Amended Complaint twelve different photos.  SAC Ex. A

23   (Doc. 38-1).[4]  He does not explain this discrepancy.  Plaintiff also again alleges that

24   _____

25   [3]  For the purposes of this Motion only, the well-pleaded allegations of the Second
     Amended Complaint are assumed true.

26   [4]  In addition to these twelve photos, Plaintiff again attaches inverted versions of some
27   of these photos.  Inverting photos for the purpose of comparison is improper because
     this changes key elements of the work – e.g., a subject's right leg bent downwards
28   now becomes a left leg.  See, e.g., SAC Ex. A (Doc. 38-1) at 2, 3, & 10.

1  Mr. Hill, a recording artist who is professionally known as Lil Nas X, copied

2  Plaintiff's photos to create photos that Mr. Hill posted on Instagram or included in

3  album covers, advertisements, and merchandise.  SAC at 3-4, ¶¶ 10-11.  He does not

4  identify these album covers, advertisements, or merchandise.

5       In his Second Amended Complaint, Plaintiff offered no new allegations relating

6  to access—whether based on a chain of events theory or widespread dissemination—

7  but now alleges that Plaintiff's photos were posted months or years before Mr. Hill's

8  photos, which Plaintiff asserts is "remarkable timing" that, he claims, suggests Mr.

9  Hill copied from Plaintiff.  Id. at 5, ¶ 13.  Plaintiff also adds for the first time a passing

10  reference to unidentified "striking similarities."  Id. at 4, ¶ 13:17-24.

11       Nor does Plaintiff offer new allegations as to the alleged copying of protected

12  expression.  He does add allegations as to his inspirations for his photos and his

13  creative choices in making them.  However, and like his prior complaints, his Second

14  Amended Complaint does not compare his photos with those of Mr. Hill, other than

15  to allege in conclusory terms that Mr. Hill's photos supposedly copied unidentified

16  "subject pose, positioning, lighting, visual effects, facial expressions, facial

17  positioning, background elements, body imagery and nudity."  Id. at 13, ¶ 22:18-27.

18  **2.  PLAINTIFF FAILS TO PLEAD PLAUSIBLE CLAIMS FOR RELIEF**

19      **(a)  The Standards Applicable to this Motion**

20       A Federal Rule of Civil Procedure 12(b)(6) motion "tests the legal sufficiency

21  of the claims asserted in the complaint."  Ileto v. Glock, Inc., 349 F.3d 1191, 1199-

22  1200 (9th Cir. 2003).  "Dismissal can be based on the lack of a cognizable legal theory

23  or the absence of sufficient facts alleged under a cognizable legal theory."  Balistreri

24  v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).  While "[t]he Court must

25  accept as true all material allegations in the complaint, as well as reasonable inferences

26  to be drawn from them" (eCash Tech. v. Guargliardo, 127 F. Supp. 2d 1069, 1074

27  (C.D. Cal. 2000)), the plaintiff must plead "more than labels and conclusions, and a

28  formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic

1    *Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, "[t]o survive a motion to

2    dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state

3    a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

4    (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the

5    plaintiff pleads factual content that allows the court to draw the reasonable inference

6    that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

7    **(b)    Plaintiff Again Fails to Plausibly Allege That Copying Occurred**

8    **(1)    Plaintiff Must Plausibly Allege That Copying Occurred**

9    "To state a claim for copyright infringement, [the plaintiff] must plausibly

10   allege two things: (1) that he owns a valid copyright in his [work], and (2) that [the

11   defendant] copied protected aspects of the [work's] expression." *Rentmeester*, 883

12   F.3d at 1116-17. "The second prong of the infringement analysis contains two

13   separate components: 'copying' and 'unlawful appropriation' [and a]lthough these

14   requirements are too often referred to in shorthand lingo as the need to prove

15   'substantial similarity,' they are distinct concepts." *Skidmore*, 952 F.3d at 1064.

16   The requirement that the copyright plaintiff plausibly plead that copying

17   occurred "is necessary because independent creation is a complete defense to

18   copyright infringement." *Rentmeester*, 883 F.3d at 1117. As a result, "absent

19   copying, there can be no infringement of copyright, regardless of the extent of

20   similarity." 2 M. NIMMER & D. NIMMER, NIMMER ON COPYRIGHT § 8.01[A] (2022).

21   The historical fact of copying is pleaded by plausibly alleging (1) "striking similarity"

22   that can only be the result of copying; or (2) the defendant's access to the plaintiff's

23   work, plus substantially similarities that are probative of copying. *Malibu Textiles,*

24   *Inc. v. Label Lane Int'l Inc.*, 922 F.3d 946, 952 (9th Cir. 2019). Plaintiff fails to

25   plausibly plead either, again failing to plead that copying even occurred.

26   **(2)    Plaintiff Fails to Plausibly Allege Striking Similarity**

27   "To show a striking similarity between works, a plaintiff must produce evidence

28   that the accused work *could not possibly* have been the result of independent creation."

6

*Stabile v. Paul Ltd.*, 137 F. Supp. 3d 1173, 1188 (C.D. Cal. 2015) (citations omitted). "In other words, as a matter of logic, the only explanation for the similarities between the two works must be 'copying rather than … coincidence, independent creation, or prior common source.'" 4 NIMMER ON COPYRIGHT § 13.02[B] (quoting *Skidmore*, 952 F.3d at 1064). Whether a plaintiff has plausibly alleged striking similarity may be decided at the pleading level when, as here, the works at issue are before the court. *See Wongab Corp. v. Nordstrom, Inc.*, 2017 WL 10439833, at *6-7 (C.D. Cal. Sept. 21, 2017) (granting motion to dismiss copyright infringement claim) (Birotte, J.).

Here, Plaintiff's first two complaints claimed only substantial similarity, and his Second Amended Complaint repeatedly claims substantial similarity. SAC at 4, ¶ 11:10-15 (The alleged copying "render[s] the original photos and the infringing copies created and published by Defendants substantially similar."); *id.* at 4, ¶ 12:24-27 (the alleged copying proven by "the numerous and substantial similarities between the parties' respective works."), *id.* at 4, ¶ 12:4-8 (on information and belief, "the infringing images created by Defendants are … substantially similar to [Plaintiff's] original photographic creations"), *id.* at 5, ¶ 13:28-14:1 (the works "are substantially similar"), *id.* at 16, ¶ 6(a):10-19 (the alleged infringement caused "confusion in the marketplace regarding the originality of the two sets of substantially similar images").

However, in a transparent attempt to sidestep the Court's ruling that Plaintiff has not plausibly pleaded access, Plaintiff now adds the allegation that copying "is evidenced by the striking similarities between Plaintiff's eleven (11) separate works and the infringing works, both when looking at the same individually, and furthermore on the whole as a group[.]" *Id.* at 4:17-24. But that is a bare legal conclusion without any identification of any allegedly strikingly similar elements. For that reason alone, it does not establish a plausible claim of copying. *See, e.g., Twombly*, 550 U.S. at 555 (the plaintiff must plead "more than labels and conclusions"). Moreover, Plaintiff's repeated allegations of *substantial* similarity negate his new reference to *striking* similarity. *See, e.g., Stabile*, 137 F. Supp. 3d at 1189 (courts have rejected "conclusory

7

[or] contradictory" claims of striking similarity (gathering cases)).

And ultimately, Plaintiff's photos and those of Mr. Hill simply are not so alike that the latter "*could not possibly* have been the result of independent creation." *Id.*, 137 F. Supp. 3d at 1188; *Wongab*, 2017 WL 10439833, at *7 ("Striking similarity is a high bar." (quoting *Briggs v. Blomkamp,* 70 F. Supp. 3d 1155, 1166-1167 (N.D. Cal. 2014))). Plaintiff's claimed similarities are in commonplace elements, such as male figures in various poses, with obvious differences in their depictions. *See, e.g., Wongab*, 2017 WL 10439833, at *7 (differences between the parties' works, as well as commonplace elements, undercuts allegation the works are strikingly similar). Plaintiff does not even come close to plausibly alleging that "the only explanation for the similarities between the two works must be 'copying rather than … coincidence, independent creation, or prior common source.'" 4 NIMMER ON COPYRIGHT § 13.02[B] (quoting *Skidmore*, 952 F.3d at 1064).

Plaintiff's belated and conclusory incantation of unidentified "striking similarity" does not save his copyright infringement claim.

### (3)   Plaintiff Again Fails to Plausibly Allege Access by a Chain of Events or Wide Dissemination

Neither does Plaintiff's Second Amended Complaint plausibly plead access.

To assert a viable claim of access, a plaintiff must allege sufficient factual content to establish a "reasonable possibility, not merely a bare possibility, that an alleged infringer had the chance to view the protected work." *Art Attacks Ink LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1143 (9th Cir. 2009). Access is generally shown through facts "(1) establishing a chain of events linking the plaintiff's work and the defendant's access, or (2) showing that plaintiff's work has been widely disseminated." *Loomis v. Cornish*, 836 F.3d 991, 995 (9th Cir. 2016). But "[a]ccess may not be inferred through mere speculation or conjecture." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000) (citation omitted), *overruled on other grounds*, *Skidmore*, 952 F.3d 1051.

1     As for widespread dissemination, Plaintiff's Second Amended Complaint
2  repeats his prior allegations that he posted his photos on his Instagram account and
3  website.  *See, e.g.,* SAC at 3, ¶ 9, *id.* at 5, ¶ 13:1-3, *id.* at 13, ¶ 21:9-12.  But the Court
4  has already ruled that those same allegations fall far short of the widespread
5  dissemination required to establish access.  Order at 5-7 ("the mere availability of a
6  work online is insufficient to establish widespread dissemination.").

7     That leaves access by plausibly alleging a chain of events linking Plaintiff's
8  photos to Mr. Hill.  But Plaintiff has not previously alleged,[5] and still does not allege,
9  that he provided his photos to Mr. Hill.  Instead, he argues that access is established
10  by the "remarkable timing" that Mr. Hill's photos all "postdate" Plaintiff's photos.
11  SAC at 5:4-10.  But there is nothing remarkable about the claimed timing.

12     First, "[b]y simple logic, it is impossible to copy something that does not exist."
13  *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1128 (9th Cir. 2002).  As a result, by necessity
14  Plaintiff limits his infringement claim to Mr. Hill's photos that "postdate" his own.
15  There is nothing "remarkable" about that.  Indeed, it would be a particularly frivolous
16  claim that a defendant copied a work that the plaintiff had not yet created.

17     Second, Plaintiff's own allegations as to the "timing" show that Mr. Hill's
18  photos were published anywhere from *months* to *years* after Plaintiff's photos, and
19  there is no obvious pattern between them.  SAC at 5-7, ¶ 14.  Plaintiff is left with the
20  mere fact that his photos predate Mr. Hill's, which is a necessary fact for any copyright
21  infringement claim.  It should, therefore, be no surprise that Mr. Hill has not located
22  any case in any Circuit stating that access is established merely by the defendant's
23  publication of the allegedly infringing work *after* the plaintiff has published his work.

24     Plaintiff fails to allege factual content plausibly establishing access and, as a
25  result, fails to plausibly plead that copying occurred.  For that reason alone, his
26  copyright infringement claim is properly dismissed.

27
28  ---
[5]  *See, e.g.,* Order at 5:4-5 (in his First Amended Complaint, "Plaintiff does not allege
any facts suggesting a chain of events for access").

(c)   **Plaintiff Still Fails to Plausibly Allege Copying of Protected Expression**

Turning to the distinct requirement that Plaintiff also plausibly plead unlawful appropriation, "the similarities between the two works must be 'substantial' and they must involve protected elements of the plaintiff's work." *Rentmeester*, 883 F.3d at 1117. Here, Plaintiff, by attaching the allegedly infringed and infringing photos to his First Amended Complaint, *precludes* substantial similarity in protected expression.

(1)   **The Extrinsic Test for Substantial Similarity**

(i)   **General Principles**

"The mere fact that a work is copyrighted does not mean that every element of the work may be protected." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348 (1991). Rather, "[t]o prove unlawful appropriation, . . . the similarities between the [] works must be 'substantial' and they must involve protected elements of the plaintiff's work." *Rentmeester*, 883 F.3d at 1117. To determine whether two works are substantially similar, "a two-part analysis – an extrinsic test and an intrinsic test – is applied." *Rice v. Fox Broad.*, 330 F.3d 1170, 1174 (2003). Because both tests must be satisfied, "a plaintiff who cannot satisfy the extrinsic test necessarily loses[.]" *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994). "[T]he extrinsic test's application may be decided by the court as a matter of law[.]" *Rentmeester*, 883 F.3d at 1118.

"[T]he extrinsic test . . . compares the objective similarities of specific expressive elements in the two works." *Skidmore*, 952 F.3d at 1064. "Crucially, because only substantial similarity in protectable expression may constitute actionable copying that results in infringement liability, 'it is essential to distinguish between the protected and unprotected material in a plaintiff's work.'" *Id.* (quotation omitted). "[E]xpressions that are standard, stock, or common to a particular subject matter or medium are not protectable[.]" *Id.* at 1069. Also, "[c]opyright law only protects expression of ideas, not the ideas themselves." *Cavalier v. Random House, Inc.*, 297

10

1   F.3d 815, 823 (9th Cir. 2002).   Accordingly, "the extrinsic test requires that the
2   plaintiff identify concrete elements based on objective criteria." *Three Boys Music*,
3   212 F.3d at 485.   Crucially, the extrinsic test is not satisfied "if the two works reveal[]
4   greater, more significant differences and few real similarities." *Funky Films Inc. v.*
5   *Time Warner Entm't Co.*, 462 F.3d 1072,1078 (9th Cir. 2006).

6        "The Ninth Circuit has long held that 'when the copyrighted work and the
7   alleged infringement are both before the court, capable of examination and
8   comparison, non-infringement can be determined on a motion to dismiss.'" *Weiss v.*
9   *DreamWorks SKG*, 2015 WL 12711658, at *4 (C.D. Cal. Feb. 9, 2015) (quoting
10  *Christianson v. West Pub. Co.*, 149 F.2d 202, 203 (9th Cir. 1945) and gathering cases);
11  *Rentmeester*, 883 F.3d at 1118 (affirming Rule 12(b)(6) dismissal based on application
12  of extrinsic test to the parties' photos).

13                  **(ii)     The Extrinsic Test as Applied to Photographs**

14       This Circuit's extrinsic test applies when the works at issue are photos, as they
15  are here.   Order at 7; *Rentmeester*, 883 F.3d at 1121.   Photos are the result of "creative
16  choices the photographer made in composing the photo—choices related to subject
17  matter, pose, lighting, camera angle, depth of field, and the like … [b]ut none of those
18  elements is subject to copyright protection when viewed in isolation." *Id.* at 1119.
19  Everyone may use "any of the individual elements featured in a copyrighted
20  photograph, 'so long as the competing work does not feature the same selection and
21  arrangement' of those elements." *Id.* (quoting *Feist*, 499 U.S. at 349).   "In other
22  words, a photographer's copyright is limited to 'the particular selection and
23  arrangement' of the elements as expressed in the copyrighted photo." *Id.* at 1120
24  (quoting *Feist*, 499 U.S. at 350-51).

25       Thus, in *Rentmeester* the Court of Appeals affirmed the district court's Rule
26  12(b)(6) dismissal because the "similarities in the selection and arrangement of the
27  photos' elements, as reflected in the objective details of the two works," were limited
28  to unprotected elements—*e.g.*, Michael Jordan in an unprotected pose—coupled with

11

differences in the poses and backgrounds.  *Id.* at 1121-24 (photos reproduced in Def's Memo. (Doc. 20-1) at 8).  Discovery could not change the two photos that were "before [the Court and] 'capable of examination and comparison,'" and, as a result, dismissal at the pleading level was appropriate.  *Id.* (quotation omitted).[6]

### (2)   The Photos Are Not Substantially Similar in Protected Expression under the Extrinsic Test

As in *Rentmeester*, the parties' photos are before the Court.  And nothing in Plaintiff's Second Amended Complaint changes the Court's prior ruling that they at most share unprotected elements selected and arranged differently.  To the contrary, Plaintiff repeats the allegations the Court concluded are insufficient.

For example, the Court recognized that while "the extrinsic test requires [] the plaintiff identify concrete elements based on objective criteria" (Order at 7 (quoting *Three Boys Music*, 212 F.3d at 485)), Plaintiff's prior complaint referred only generally to "subject pose, positioning, lighting, visual effects, facial expressions, facial positioning, background elements, body imagery and nudity…."  Order at 8. Yet, in his Second Amended Complaint Plaintiff repeats this identical litany the Court already found insufficient to satisfy the extrinsic test.  SAC at 13, ¶ 22.  Similarly, Plaintiff continues to rely on generic elements such as "nude body image," "poses," and "facial expressions" (SAC at 12, ¶ 17 & 13, ¶ 22), ignoring this Court's ruling that (1) the subject matter of the photos are different (Plaintiff as opposed to Mr. Hill) (Order at 8-9), (2) Plaintiff cannot claim copyright protection in the features of the human body (*id.* at 9), and (3) "Plaintiff cannot copyright [a] pose" (*id.* at 9).

Challenged to identify similarities in, for example, "camera angle, timing, and shutter speed … that give rise to an inference of copyright protection over his poses"

---

[6]   *Rentmeester* noted that access was not an issue in that case.  *Id.* at 1123.  Access is disputed here but is not a consideration under the extrinsic test.  *Id.* at 1124-25; *Skidmore*, 952 F.3d at 1069 (abandoning "inverse ratio" rule relating access to substantial similarity probative of copying).

(*id.* at 9), Plaintiff alleges no facts as to timing and shutter speed and, as to angle, he offers a rote description such as his camera was "even with the subject." SAC at 7-11, ¶¶ 15(a)-(d), (f)-(g).  He also describes his inspiration and creative choices in his photos (*id.* at 7-11, ¶ 15), but he fails to identify concrete similarities with Mr. Hill's photos.   Moreover, Plaintiff's new descriptions of *his own* photos prove the dissimilarities with Mr. Hill's photos, as Plaintiff has now pled himself into dismissal.

(i)   SAC Ex. A – 1st Set (Doc. 38-1 at 2)

Plaintiff's Photo                                        Mr. Hill's Photo

   

• **Bodies**: Each subject is a different person, positioned differently.  In Plaintiff's photo, the length of the subject's entire body is visible, as his right side faces the viewer and right leg is angled backwards, foot extended.  Both hands rest on or near the subject's left knee and no fingers or earring are visible.  The subject sits with his back and head angled down, while part of his abdomen and backside remain discernable.  By contrast, in Mr. Hill's photo, he is partially obscured with his left side closest to the viewer, his right leg and side not visible, and he wears an earring.

• **Lighting and Camera Angles**: Plaintiff's photo depicts a yellow light emitting from a lantern on the floor, partially illuminating the subject's body, while heavy shadows appear on the back wall and the subject's head, neck, and back.  His right leg is angled slightly towards the camera.  By contrast, Mr. Hill's photo shows a pink light behind the subject's face and illuminating his head, and there are no heavy shadows on or behind the subject.  Mr. Hill is in complete profile, and there is no lantern casting yellow light on him.  *See, e.g.*, *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d

13

763 (9th Cir. 2003) (subtle difference in lighting, camera angle, shadows, reflections, and background sufficient to render defendant's otherwise similar-looking photos non-infringing).  Notably, the camera angles are different in each, with the camera in Plaintiff's photo being farther away from the subject and angled slightly downward to capture the entire subject's body, while Mr. Hill's camera is angled closer to the subject and slightly upward.

•**Other Elements**: Additional elements show further dissimilarities.  In Plaintiff's photo, the subject resides near the back of the photo, and sits on a white blanket on the floor.  Mr. Hill's has a purple background, and leaves are visible behind the subject, and he rests near the front of the photo.  The subject is crouched in a dew-covered pink flower suspended in air, evoking a butterfly's metamorphosis.  The photo does not display a wall or floor.  *See Rentmeester*, 883 F.3d at 1122 (photo not infringing where background differs; in one, there is a cloudless sky and sun while in the other the Chicago skyline is silhouetted against the sunset, with no sun visible).

• **Plaintiff's As-Pled Differences**: By now describing his photo in the Second Amended Complaint, Plaintiff has pled crucial differences between the works.  For example, while Plaintiff now alleges that his photo shows his subject's "body and head in a slouched position" and "arms close to the body and neck" (SAC 7, ¶ 15(a)), Mr. Hill's pose is different – he is curled into a ball, not slouched, his head is horizontal and he does not lean down, and his right hand rests on his left shoulder, fingers visible.  Plaintiff also pleads his photo has "subdued lighting" and a "camera even with the subject," id., but Mr. Hill's photo showcases bright neon colors and the subject is positioned towards the right side of the photo, not even with the camera.  As to background, the wall behind him is white and the floor is brown.  His photo, he pleads, has black "texture[d]" marks.  *Id.*  By contrast, Mr. Hill's image has no textured marks.

14

1

### (ii)   SAC Ex. A – 2ⁿᵈ Set (Doc. 38-1 at 4)

2

<u>Plaintiff's Photo</u>                                    <u>Mr. Hill's Photo</u>

            

9     •**Bodies**: The subjects of each work are different persons.  In Plaintiff's photo,

10    the subject's right arm rests on the ground propping up his body, while his left elbow

11    rests on his knee with his left arm angled towards his face which is covered by his

12    hand.  The ball of the subject's left foot is perched on his right ankle, and his naval is

13    visible.  Blue lightning comes from his left hand, and he has a necklace but no hair,

14    jewelry, wiring, or accessories.  By contrast, in Mr. Hill's photo, his right arm is in

15    the air with his left hand over his naval, and right elbow bent so his right wrist can rest

16    on his knee.  His arm is angled away from his uncovered face.  Mr. Hill's left foot

17    does not rest on the other, and his naval is not visible.  He holds a wooden nunchaku

18    in his right hand, has red hair, and silver/gold jewelry on his nose, ears, hands and

19    wrist (but not neck), as well as red and silver wiring around his legs and arms.

20    •**Lighting and Camera Angles**: In Plaintiff's photograph, a yellow sky and

21    sun behind the subject's body lights him from behind and casts heavy shadows across

22    his chest, while in Mr. Hill's photo, flames from four white candles cast light on the

23    front of his body, although no heavy shadows are visible.  Plaintiff's subject is slightly

24    angled, with his right knee closest to the camera, and his body takes up most of the

25    frame, suggesting he is near the camera, while Mr. Hill is perpendicular to the viewer,

26    and takes up less of the frame, suggesting he is farther away from the camera.

27    Plaintiff's camera is also positioned to be level with his subject's leg and looks up

28    (slightly) towards the subject and sky, while in Mr. Hill's photo, the camera is angled

15

farther away, centering Mr. Hill in the frame.

- **Other Elements**: In Plaintiff's photo, the subject appears outdoors, with clouds faintly visible above his left forearm.  In Mr. Hill's photo, he appears to be on a textured white canvas.  Puppet-like red strings are tied to Mr. Hill's limbs, holding them in place; Mr. Woodland's subject's limbs are not constrained or tied in place.

- **Plaintiff's As-Pled Differences**: By now describing his photo in the Second Amended Complaint, Plaintiff has pled crucial differences between the works.  For example, Plaintiff now pleads that only one "of the subject's areolas [is] obscured," SAC at 8, ¶ 15(b), but neither of Mr. Hill's nipples are visible.  He also alleges he "positioned [his] camera even with the subject" (*id.*), but Mr. Hill's camera position is different, with additional space below him in the bottom of the shot, and on his left and right.  Plaintiff alleges that the sunlight in his photo references "sunshine piercing through a fallen tree" (*id.*), while in Mr. Hill's photo, there is no sunlight or tree.  Plaintiff further pleads he added a "light effect to obscure the groin area" (*id.*), but Mr. Hill's genitalia are veiled by a red rectangular object, not a light effect.

### (iii)   SAC Ex. A – 3rd Set (Doc. 38-1 at 4)

Plaintiff's Photo                     Mr. Hill's Photo

                

- **Bodies**: In the Plaintiff's photo, there is a single subject, Mr. Woodland: his right arm extends above his head, palm downwards, while his left arm extends away from his body with his hand angled downwards in a tai-chi-like position.  The subject's feet are not visible, his head faces left, and he has no hair.  By contrast, in Mr. Hill's photo, there are seven different pictures of him, none of which have the

same arm or leg displays.  In most, the subjects' feet are visible, their heads angled differently from Plaintiff's, and all have black hair.  Most are facing the opposite way.

• **Lighting and Camera Angles**: Plaintiff's subject is basked in a blue light, with a yellowish-white sun-effect obscuring his genitalia.  A light's reflection appears on the wall behind his left arm, the photo appears heavily saturated, with the camera angled below the subject's body to show him from below.  By contrast, in Mr. Hill's photo, there are faint rainbow halos surrounding the subjects, with a smaller white sun-effect obscuring the genitalia.  There are no other visible sources or reflections of light, and the photo has less saturation and is not angled below the subjects.  The subjects also take up a fraction of the total photo and are depicted at various sizes, all of which are much smaller than Plaintiff's subject.

• **Other Elements**: Additional elements show more departures.  In Plaintiff's photo alone, the subject is posed on a textured bed.  Pillows and a picture frame are visible.  Unlike Defendant's photo, there is no text, clouds, or rainbow halo around the subject, and he does not float in the sky and is not glossy.

• **Plaintiff's As-Pled Differences**: By now describing his photo in the Second Amended Complaint, Plaintiff has pled crucial differences between the works.  For example, Plaintiff now pleads his photo features a single subject in a "dance" that requires "delicate bends at the elbows and wrists," SAC at 8, ¶ 15(c), while in Mr. Hill's photos, there are seven subjects, none of whom appear in a dancelike position or with the same wrist or elbow bends.  Plaintiff pleads the camera is "even with the subject," *id.*, (in fact, it rests below, looking up), while the angle in Mr. Hill's photo varies based on each subject, and none are the same as Plaintiff's.  Plaintiff now further alleges his photo is set in a "hotel" (*id.*), while Mr. Hill's is set in the sky. Additionally, Plaintiff claims he inserted "cloud-like effects" (*id.*), with clouds that appear in front of the subject's body, while the clouds in Mr. Hill's photo appear in the distance behind the seven subjects.

**(iv)    SAC Ex. A – 4th & 5th Sets (Doc. 38-1 at 5-6)**

<u>Plaintiff's Photos (left three)</u>                                    <u>Mr. Hill's Photo</u>

   

- **Bodies**: The subjects of these works are different.  Plaintiff's photos display three subjects, whose arms are in front of his body, at his neck, and/or holding a chain near his left shoulder.  The subject has no visible tattoos or hair, and in the third photo is clothed, with a light-colored strap across his right shoulder.  The subject's face is obscured in the first two photos; in the third, the subject wears a reflective visor shielding his forehead, eyes, and nose.  By contrast, in Mr. Hill's photo, the single subject's arms rest at his side.  He has black hair, a metallic visor covering only his eyes, and tattoos across his chest and arms.  His hands are not visible.  Unlike Plaintiff's works, Mr. Hill's subject stands on a cloud with a halo of light surrounding his head, and airborne butterflies circle around him.

- **Lighting & Camera Angle**: This element is different too.  In Plaintiff's photos, the lighting is yellowish, dark-blue, and black-and-white, respectively.  In the first photo, a light source appears in front of the subject's face, hiding his facial features.  In the second, Plaintiff's body and face are darkened so that they are hidden, with the darkest part of the photo being the subject's face.  By contrast, Mr. Hill's photo is well-lit, with subject backlit by the halo of light, and neither his face nor upper body is obscured.  The photo also depicts vivid hues that do not appear in Plaintiff's works (e.g., reds, blues, and pinks).  And while all the photos look at the subject from straight ahead, the camera is positioned at different distances, which is why Plaintiff's subjects appear closer than Mr. Hill's and the subjects are different sizes.

•**Other Elements**: There are additional contrasting elements.  While the chains in Plaintiff's photos run vertically, Mr. Hill's run horizontally, snaking around his body.  Butterflies sit on his chest, and he is in the sky surrounded by crystal-like bars evoking a prison.  In Plaintiff's second photo, there are marks surrounding the subject, suggesting it may be raining – a feature that is not visible in any of the other photos.

•**Plaintiff's As-Pled Differences**: By now describing his photos in the Second Amended Complaint, Plaintiff has pled crucial differences between the works.  For example, Plaintiff now pleads that his chains, which are "light colored," "encircle[e] the subject's neck," <u>SAC at 9, ¶ 15(e)</u>, and none are broken.  In Mr. Hill's photo, broken large chrome chains levitate around his shirtless body, not neck, with a crumbling silver collar around his neck.  Plaintiff also pleads his works "focus largely on the upper body of the subject" and the "camera [is] even with the subject's upper body," <u>id.</u>, but Mr. Hill shows his lower torso, cutting off just above the groin.

**(v)    SAC Ex. A - 6ᵗʰ & 7ᵗʰ Sets (Doc. 38-1 at 7-8)**

<u>Plaintiff's Photos (left two)</u>                    <u>Mr. Hill's Photo</u>

  

•**Bodies**: The subject and their poses diverge.  In Plaintiff's first photo, the subject's legs are angled oddly, making it hard to see which is curved and which extended.  The subject's right hand hangs downwards, with the left arm supporting the body's weight.  The subject's head is angled backwards and tilted up to the sky, and the subject has a tattoo on his upper thigh, and is barefoot.  In Plaintiff's second photo, the nude subject is without visible hair, and the bottom of his right foot is

closest and visible to the camera.  The subject's right leg is obscured completely; the left leg bends significantly, with the left foot angled back behind his body.  The subject's right arm extends above his head, while his left arm is only partially in frame.  Much of the subject's chest is obscured.  By contrast, in Mr. Hill's photo, the subject is wearing large boots and has white cloth draped on his arms, chest, and leg, as well as translucent wings attached to his body.  Black hair is visible, and he has a tattoo on his left hip.  His head is angled to make eye contact with the camera, and half of his chest is observable.  His left leg is slightly angled closer to the camera, as if he is stepping forward in the air.  Butterflies and clouds surround him.  The subjects' facial expressions differ.  In Plaintiff's first photo, the subject's face is not visible, while in the second, he makes a pained expression, mouth agape, face away from the camera.  Mr. Hill's subject's lips are pursed as he looks to the camera, seemingly relaxed.

- **Lighting and Camera Angles**: Each subject is sized and angled differently.  Plaintiff's first photo has the smallest subject, while the second subject fills most of the frame.  By contrast, Mr. Hill's subject is sized in between these two works.

- **Plaintiff's As-Pled Differences**: By now describing his photos in the Second Amended Complaint, Plaintiff has pled different creative elements between the works.  Plaintiff pleads his first work has "celestial or atmospheric effects," SAC at 10, ¶ 15(e), with the subject floating in space with a black background and countless stars, and glare from the sun in the right corner.  By contrast, in Mr. Hill's photo, he floats among purple clouds and a blue sky, with a small sun in the top left corner.  While Plaintiff now pleads his own photos' "camera angles [look] up toward the subject," id., the specific angles in the parties' works' diverge: Plaintiff's first photo shows the subject positioned far from the camera so the bottoms of his feet are not visible, while Plaintiff's second photo, which is black-and-white, captures the subject at the base of his left foot while he lies down on a wrinkled bed.  Mr. Hill's photo, by contrast, shows him floating, but with the bottom of one boot visible closest to the camera.  Plaintiff alleges his first subject is "loudly clothed" in a blue coat, while the other subject is

1   "nude," *id.*  To the contrary, Mr. Hill is neither wearing a blue coat nor fully nude.

2   **(vi)   SAC Ex. A – 8ᵗʰ Set (Doc. 38-1 at 9)**

3   <u>Plaintiff's Photo</u>          <u>Mr. Hill's Photo</u>

          

10   • **Poses and Bodies**: The subjects' bodies are not similar.  In Plaintiff's photo,
11   there are three sets of bodies staggered successively behind one another, evoking
12   DaVinci's Vitruvian Man.   The subject's arms are extended with palms facing
13   downward and his left pinky extends out.   The subject's legs are positioned
14   downwards, in a 'v' shape.  No hair is visible in the first photo, and the subject's head
15   and stomach are undefined.  By contrast, Mr. Hill's photo shows the subject standing
16   with his arms bent at the elbow and angled upward, palms toward the sky.  The subject
17   levitates multiple colored orbs above each hand, and his hair, face, naval, arms, and
18   stomach are all visible and clearly defined.  His feet extend apart, widening at his base,
19   suggesting he is standing.   The subject looks straight toward the camera, eyes and
20   facial features clearly visible.

21   • **Other Elements**: Additional elements show more dissimilarities.  The setting
22   of each work is different.  Plaintiff's photo looks as if it is set in space, and the way
23   the light reflects in the background suggests the body may be traveling at a great speed
24   away from the camera, evoking depictions of warp speed.  By contrast, the subject of
25   Mr. Hill's photo appears stationary and is enveloped by multicolored rays of light
26   emanating from his body, molded around his pose.

27   • **Plaintiff's As-Pled Differences**: By now describing his photo in the Second
28   Amended Complaint, Plaintiff has pled crucial differences between the works.

21

Plaintiff now pleads his subject's "legs and feet [are] relatively close together," <u>SAC at 10, ¶ 15(f)</u>, not far apart like they are in Mr. Hill's photo. As to color, lighting, and camera angle, Plaintiff now pleads his work has "relatively warm, vibrant colors and textures to, and surrounding the subject," <u>*id*.</u>, but his colors, textures, and placement all differ from Mr. Hill's work. In Plaintiff's photo, the subject's bodies are blue, green, and red/white/yellow, and appear on a black background. There are three colored horizontal bars behind the subject's lower legs, and a white glare near the subject's legs. By contrast, Mr. Hill's photo shows pink, yellow, light green, and turquoise hues (but no red or dark blue/green), and the subject's natural skin color is shown. While Plaintiff's photo shows splashes of color on the subject's legs and feet, the color of Mr. Hill's legs and feet are obscured by a white light emanating from the groin. Nor do the subjects appear in the same place in their respective works, due to different camera angles. Plaintiff now also pleads his camera is "angled [] to be even with the subject," <u>*id*.</u>, which consists of him perched towards the top of the photo, with a sizeable amount of black space under him and the camera looking slightly upwards; Mr. Hill's photo is more closely centered, with feet almost touching bottom edge.

### (vii)   SAC Ex. A – 9th Set (Doc. 38-1 at 10)

<u>Plaintiff's Photo</u>                    <u>Mr. Hill's Photo</u>

  

•**Poses and Bodies**: The subjects of each work pose differently. In Plaintiff's, the nude subject is leaning the left side of his body against a cloth-covered wall. His body is hunched over slightly, with his head and upper back angled down, with his right hand resting on his thigh. His neck cannot be seen. The subject's lower legs are

visible, showing a bend at the right knee, and the back of his right foot is angled to suggest he is resting weight on his toes.  The subject does not have any hair on his head and does not wear jewelry.  By contrast, Mr. Hill's photo shows the subject lensed from behind, with his head twisted backwards towards the camera, neck visible, his arms stretched downwards, and fingers clasped behind the buttocks.  His legs are not visible below the knee.  The subject's buttocks, back, and leg muscles are visible, prominent, and defined, and the subject has hair and wears jewelry on his ear, neck, and wrists, has silver nails, and has a glossy complexion.

- **Plaintiff's As-Pled Differences**: By now describing his photo in the Second Amended Complaint, Plaintiff has pled crucial differences between the works. Plaintiff now pleads his subject poses behind "Polkadot [sic] plant," SAC at 11, ¶ 15(g), but no plants appear in Mr. Hill's photo, which shows clouds and a sunset.  As to lighting and camera angles, Plaintiff's photo is in black and white, and he "is in profile," *id.*, leaning against a white sheet or canvas near the back of the frame, with the camera is "even with the subject" *id.*, resting at feet level; Mr. Hill is, by comparison, not in profile, and larger and set against a pink and orange sky, placing him towards the front of the frame, with the camera at a knee/rear-end level.

### (viii)  SAC Ex. A – 10th Set (Doc. 38-1 at 11)

<u>Plaintiff's Photos</u>

 

<u>Mr. Hill's Photo</u>



- **Background Elements**: It is apparent from first glance that the subjects in these photos are situated against unmistakably different backgrounds, rendering the works substantially different. Plaintiff's photos are set in a yellow room; in the second photo, for example, a white door and outlet are visible, along with clothes strewn on the floor. By contrast, Mr. Hill's subject levitates in front of a fantastical environment with classical-themed columns, entablatures, sculptures, butterflies, bubbles, a blue sky with clouds, a stream, a waterfall, vines, grass, and a second nude figure standing near a pink tree, evoking biblical imagery and the heavens depicted in works such as those from the artist John Stephens. A snowy mountain centers the image, appearing directly under the subject's body. Because, like in _Rentmeester_, the photos' backgrounds here "differ as to expressive details in material respects," 883 F.3d at 1122, these many divergent background elements preclude a finding of infringement.

- **Poses and Bodies**: The subjects of each work are also positioned differently. Plaintiff's subject's left leg is hyperextended out and down, and his right bent at an angle such that the right foot (only partially visible) rests under the left knee. Mr. Hill, by contrast, also has his left leg extended, but at less of an angle, and his right knee is bent such that his right foot (fully visible) appears under his left calf. Plaintiff's second photo shows the subject bending a different leg (at a different angle) altogether. As to the upper body, only one arm is visible in Plaintiff's first photo, and it lies across the subject's chest; in the second, the subject's left arm is extended backwards, with his hand facing down and inwards, with his right hand touching the ground. By contrast, Mr. Hill's left arm is extended behind him but faces upwards so as to pinch the air, while his right arm is bent with his palm extended, allowing him to cup a bubble. The subjects' heads and necks rest at different angles. In Plaintiff's first photo, the subject's head rests well above his feet, and in his second, it rests below them, while Mr. Hill's head is level with his feet. Finally, Mr. Hill's back is noticeably more arched, and he has hair, an earring, and glossy complexion.

24

- **Lighting and Camera Angles**: These elements are dissimilar. Plaintiff's subjects' rest on a stool in front of a yellow wall, suggesting he is in the middle or the back of the frame, while Mr. Hill levitates in front of columns and a mountain range, placing him towards the front of the shot. Additionally, unlike Plaintiff's subjects, which extend across much of the photos, Mr. Hill's subject takes up a smaller portion of the frame, showing background elements surrounding him. There is a rainbow halo of light surrounding Mr. Hill, reflecting light off his body. Shadows across the back wall are visible in Plaintiff's second photo, while none appear in Mr. Hill's image.

- **Plaintiff's As-Pled Differences**: By now describing his photos in the Second Amended Complaint, Plaintiff has pled crucial differences between the works. His only new allegation involves a non-copyrightable pose, e.g., that his subject is in an "arched supine pose," SAC at 11, ¶ 15(h), which as described above is different than Mr. Hill's subject's pose.

### (d)   Granting Plaintiff Leave to Amend a Fourth Time Would Be Futile

Despite three opportunities to plead a claim, multiple meet-and-confers, and the Court's December 8, 2022 Order identifying multiple deficiencies with Plaintiff's pleading, Plaintiff has failed to plausibly plead copying or substantial similarity in protected expression. Further, no amendment will change the photos, which, as a matter of law, are not substantially similar. Accordingly, Mr. Hill's Motion should be granted without leave to amend. *Rentmeester*, 883 F.3d at 1125.

## 3.   CONCLUSION

Mr. Hill respectfully requests that the Court grant his Motion and dismiss Plaintiff's Second Complaint in its entirety, without leave to amend.

Dated: January 11, 2023

        /s/ *Peter Anderson*
Peter Anderson, Esq.
Adrian F. Vallens, Esq.
DAVIS WRIGHT TREMAINE LLP
Attorneys for Defendant
MONTERO LAMAR HILL